AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with Facebook/Messenger username 6igman or ID 100000647488215 that is stored at premises controlled by Facebook Inc.

Case No.  8:22-cr-1000-JDA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit submitted in support of this Application.

located in the _____ District of  South Carolina , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit submitted in support of this Application.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | prohibited person in possession of a firearm and/or ammunition, possession of a |
| 18 U.S.C. § 924(c) | firearm in furtherance of a drug trafficking crime, possession with intent to |
| 21 U.S.C. § 841(a)(1) | distribute and/or distribution of a controlled substance |

The application is based on these facts:

**See attached affidavit**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Thomas R. Kurtz, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  Sept 26, 2022

*Judge's signature*

City and state:  Greenville, SC

Jacquelyn D. Austin, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Information associated with Facebook/Messenger username **6igman** or ID **100000647488215** that is stored at premises controlled by Facebook Inc. | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Thomas R. Kurtz, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I submit this affidavit in support of an application for a search warrant for information associated with a certain Facebook/Messenger user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 3051(a), that is, an officer of the United States who is empowered to conduct investigations of and to make arrests for any offense against the United States. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since January 2016. I am

currently assigned to the Greenville, South Carolina Field Office. My duties involve the criminal investigation of federal firearms offenses, associated violent crimes, and narcotics offenses.

3.     Prior to serving as an ATF Special Agent, I was employed by the Prineville Police Department in Prineville, Oregon, for seven years. While with the police department, I worked as a Patrol Officer, Narcotics Detective, and a Sergeant. While assigned as a Narcotics Detective, I worked with the Central Oregon Drug Enforcement (CODE) Team, a HIDTA Taskforce. In these positions, I investigated various criminal offenses, including crimes related to firearms and narcotics trafficking. During my career as a law enforcement officer, I have written numerous search warrants, purchased firearms while working in an undercover capacity, and have frequently used the services of informants, cooperating defendants, and other confidential sources of information. I have also used multiple databases and installed and monitored numerous electronic tracking devices for investigative purposes.

4.     I have received training, both formal and informal, in the investigation of controlled substance violations, firearms trafficking, and financial crimes. I have participated in the investigation, arrest, and prosecution of numerous firearm and drug traffickers. From personal participation and from oral and written reports by other local, state, and federal law enforcement officers, I am familiar with the facts and circumstances of this investigation. This affidavit does not include all the facts known to me, but only those that I respectfully submit are sufficient to establish probable cause for the requested search warrant.

5.     Based on the facts as set forth in this affidavit, I respectfully submit there is probable cause to believe that Shamerian JONES has violated 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(c)(1)(A), and 21 U.S.C § 841(a)(1). I further submit that there is probable cause to search

the account described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

6. On February 17, 2022, the Anderson City Police Department, using a confidential informant (CI), made a controlled purchase of marijuana from Shamerian JONES. In order to set up the purchase of marijuana, the CI communicated with JONES over telephone number 314-397-5413. The CI was also in contact with JONES over the phone when JONES arrived at the buy location. JONES was later arrested on March 22, 2022, as described below. Following his arrest, while being interviewed by law enforcement, JONES provided officers with the phone number 314-397-5413.

7. I previously reviewed JONES's criminal history. JONES has the following notable convictions: possession of marijuana (2018); failure to stop for a blue light (2019); and hit-and-run with property damage (2019).

8. On March 22, 2022, Shamerian JONES was arrested by the Anderson County Sheriff's Office and found to be in possession of approximately 777.5 gross grams of marijuana, a firearm, and approximately $2,340.00 in U.S. Currency.

9. Shortly after his arrest, Deputy Pierce, Detective Velez, and I interviewed JONES at the Anderson County Sheriff's Office. The post-*Miranda* interview was recorded and documented in a report of investigation.

10. During the interview, JONES claimed possession of the marijuana. JONES confirmed he is a marijuana dealer but said he is not "El Chapo." JONES confirmed he uses marijuana daily for pain and to help with his appetite. JONES said he carries a firearm for protection after being shot and injured in a city park in May 2021.

11. During the interview, I asked JONES about a seized phone from the March 22, 2022 arrest. I asked if there would be anything on the cellphone that was violent. JONES said, "No sir." I asked JONES if it would be just drug activity. JONES answered, "Yes sir." A search of the phone pursuant to a federal warrant confirmed this statement. The phone data revealed apparent drug-related content from January 2018 through the day the phone was seized.

12. I advised JONES that he had recently been intercepted by law enforcement during an investigation involving the interception of wire communications. JONES said if he was intercepted then it would just be about "weed."

13. On April 1, 2022, while inventorying the contents of JONES's seized Dodge Durango, I located a second cellphone in JONES's vehicle. The cellphone was a black Motorola Tracfone. The phone was searched pursuant to a federal search warrant. The phone had limited data, but did have text conversations consistent with a drug sale.

14. On July 15, 2022, JONES was the passenger in a vehicle stopped by the Anderson City Police Department. During the stop, police searched the vehicle after locating a marijuana cigarette in plain view and observing the odor of marijuana. Two firearms were located in the glove box in front of where JONES was seated. JONES claimed one of the firearms (Taurus G2C 9mm pistol with serial number TMC88760), and the driver claimed the other firearm.

15. On September 2, 2022, investigating officers received ballistics information from the South Carolina Law Enforcement Division. This information established a potential connection between the Taurus G2C 9mm pistol with serial number TMC88760 claimed by JONES and shell casings recovered from the scene of a shooting into a dwelling on December 5, 2019.

16.     On September 9, 2022, Anderson County Deputies were attempting to locate JONES for an active state arrest warrant for criminal domestic violence. On this date, a "Facebook live" video was posted on JONES's Facebook account. In the video, JONES appeared to be driving in a vehicle with a small bag of marijuana, two firearms, and several white pills in his possession. I reviewed the video and believe the video was taken by a cellphone.



17.     This information from the Facebook live video was passed onto the Greenville County Sheriff's Office. Shortly thereafter, JONES was located and stopped on Interstate 85 near Exit 51 in Greenville County. Deputies arrested JONES pursuant to the state arrest warrant. A passenger was with JONES and identified as Antonio HALL.[1] Deputies searched the vehicle after observing the odor of marijuana. During the search, deputies located suspected marijuana and three firearms. The subjects were advised of their *Miranda* rights. JONES advised Deputies that the two firearms in the center console area between the seats belonged to him. HALL advised Deputies that the Glock pistol located in the glove compartment belonged to him. Both subjects were charged with possession of marijuana. Deputies located and seized the following three phones: 1) black Samsung Z Flip cellphone bearing IMEI number 35045700647436; 2) black Nokia Tracfone bearing IMEI number 358712910326626; and 3) black Nokia Tracfone bearing IMEI number 358712910336831. JONES was asked which phones belonged to him but claimed his phone had fallen out on the side of the road.

18.     During the traffic stop, Deputies observed a bullet hole in the rear of the vehicle JONES was driving. Deputies asked JONES about the bullet hole, and JONES advised it occurred the previous weekend at the Belton Bar in Belton, South Carolina. I am aware that JONES's associate, Javaris HILL, was shot and injured during the same weekend JONES stated that his vehicle was shot. I further know that HILL was not forthcoming about the incident to law enforcement.

---

[1] SA Kurtz reviewed Antonio HALL's criminal history and found a 2020 arrest for a drug-related charge and a 2022 arrest for Possession of a Weapon During a Violent Crime, Discharging a Firearm into a Dwelling, Malicious Injury to Real Property, Unlawful Carrying of a Weapon, and Attempted Murder.

19.     The three phones, collectively the Target Devices, are currently in ATF custody at the ATF Greenville Field Office. Based on my training and experience with the ATF, I know that the Target Devices are being stored in a manner in which their contents are in substantially the same state as they were when the Target Devices first came into the possession of law enforcement. Further, as detailed above, in applying for this warrant, I know the following:

- On February 17, 2022, JONES used a cellphone to coordinate a drug deal;
- On March 22, 2022, JONES admitted that there would be evidence of drug dealing on his cellphone;
- During a prior law enforcement investigation, JONES was intercepted communicating with an identified drug dealer; and
- A previously-searched cellphone belonging to JONES yielded drug evidence and location data providing further evidence of criminal activity.

## FACEBOOK-SPECIFIC INFORMATION

20.     On September 9, 2022, I caused a search of the username **6igman** and found the profile id to be **100000647488215**. **6igman** is the username for JONES's Facebook page.

21.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com and https://www.messenger.com. Facebook allows its users to establish accounts with Facebook and/or Messenger, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

22.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook

users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

23. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

24. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

25. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations

8

to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

26. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

27. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

28. Messenger, is an instant messaging service owned by Facebook. You do not have to be on Facebook's website or even have a Facebook account, to use Messenger. While the two are partially connected when you have a Facebook account, you aren't required to have one to use Messenger.

29.     Messenger can be used in conjunction with Facebook on your computer, at Messenger.com or accessed using the mobile Messenger app cellular devices. Because Messenger works on iPhones, it also works on the Apple Watch.

30.     Even though Messenger is easily accessible through the Messenger website, your Facebook account on your computer, and the mobile apps, you can install add-ons in some browsers that are designed to make it even easier to use. These add-ons are not official Facebook apps but are connected to Messenger.

31.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

33.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

34.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

36. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

37. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

38. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

39. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a

Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime) or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

40.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning

subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

42.     Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See also* 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).

Respectfully submitted,

_____
Thomas R. Kurtz
Special Agent, ATF

Subscribed and sworn to me on September 26, 2022:

_____
THE HONORABLE JACQUELYN D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook/Messenger username **6igman** or the Facebook/Messenger profile ID number **100000647488215**, that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A for the period of January 1, 2018, through September 26, 2022:

(a)     **Subscriber Account information** including subscriber name and any alternate names the account holder has on the account, including nicknames or aliases, birth date, email address(es), physical address (city, state, zip, country), linked or provided telephone number(s), screen name(s), any associated websites, other linked social media accounts, any associated Messenger account(s) information, and any other personal identifiers;

(b)     **Subscriber Location information:** Any information regarding the subscriber/user's location between the dates listed. Such information to include data gathered by Facebook Location Services or Location History, user "check-ins," metadata and Exchangeable image file format (EXIF) information for images or videos posted during the time range, or by any other method of determining the location of the subscriber;

(c) **Subscriber Device information:** Any information regarding the subscriber's computers, phones, connected TVs, and other web-connected devices including device attributes (operating system, hardware, browser type, apps, etc.), device identifiers (IMEs, device IDs, Family Device IDs, and any other unique identifiers), device signals (Bluetooth signals, Wi-Fi access points, beacons, and cell towers), device settings (GPS location, camera, or photos), device network and connections (mobile operator or ISP, language, time zone, mobile phone number, IP address, connection speed and, in some cases, information about other devices that are nearby or on a user's network);

(d) **Private Messaging:** All communications (including archives) between the listed Facebook user account (including Messenger) for the listed date range, including private messaging and the contents of messages in the user's inbox, sent or received, regardless whether the messages are retained in their original location or have been moved by the user to other folders including trash;

(e) **Customer Service Records:** All subscriber contacts with customer support including notifications or complaints of the account being hacked or stolen, or any other issue with the use of or access to the Facebook account that were created, uploaded, adjusted, accessed, used, modified, or deleted between the listed dates;

(f) **Subscriber Neoprint** (Expanded Subscriber Content and subscriber profile) between and including the dates listed including profile contact information, mini-feed, status update history, shares, messages (place limits on scope, such as identity of others with whom messages were exchanged, and/or date range), wall postings, friend listings with Friends Facebook IDs, group listings with Facebook

2

      Group IDs, future and past events, video listings with filename, and Privacy Settings;

(g) **User Posts** between and including the dates listed, such as wall posts, regardless whether the messages are retained in their original location or have been moved by the subscriber to other folders including trash, including source and destination IP addresses and ports, dates and timestamps;

(h) **User Photoprint** between and including the listed dates listed (all photos uploaded by the user; all associated Faceprint data; and all photos uploaded by any user which have the listed subscriber "tagged" in them), for the listed Facebook.com subscriber identifications;

(i) **Subscriber Financial Information** and Account Status History including link account information and transaction history for the listed date range.

Facebook is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and/or instrumentalities of violations of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(c)(1)(A), and 21 U.S.C § 841(a)(1) involving Shamerian JONES since January 2018, including, for the user ID identified in Attachment A, information pertaining to the following matters:

  (a) Communications between JONES and other subjects involving possession of firearms by prohibited subjects and/or violent crimes prohibited by federal law;

3

(b) Communications between JONES and other subjects involving drug possession and the sale of illegal drugs;

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).